UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND,
ANNUITY FUND, AND APPRENTICESHIP,
JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND, et
al.,

                              Petitioners,

            -against-

ABBA CONSTRUCTION LLC,

                              Respondent.

1:22-cv-05699 (JLR)

**MEMORANDUM OPINION
<u>AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

On July 5, 2022, Petitioners – Trustees of the New York City District Council of

Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman

Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and

Charity Fund, Carpenter Contractor Alliance of Metropolitan New York (the "Funds"), and New

York City District Council of Carpenters (collectively, "Petitioners") – filed a Petition under the

Labor Management Relations Act of 1947 ("LMRA") to confirm an arbitration award entered by

impartial arbitrator J.J. Pierson on April 8, 2022 against employer ABBA Construction LLC

("Respondent").  *See* ECF 1 ("Pet."); ECF No. 1, Ex. J ("Award").  For the following reasons,

the Petition is GRANTED.

## BACKGROUND

In connection with its work on a public project for the City of New York, Respondent

signed a Project Labor Agreement Letter of Assent ("PLA LOA") wherein it agreed to be bound

to the NYC Agency Renovation & Rehabilitation Project Labor Agreement ("PLA") and make

certain payments under a collective bargaining agreement called the Independent Building Construction Agreement ("CBA").  Pet. ¶¶ 9-14; *see* ECF No. 1, Exs. A ("Ex. A"), B ("Ex. B"), C ("Ex. C").  The CBA also requires Respondent to furnish books and records in connection with audits to ensure compliance with the contribution requirements.  Pet. ¶ 18; *see* Ex. C.

If an employer refuses to comply with the CBA's audit procedures, the Revised Statement of Policy for Collection of Contribution Benefit Fund established by the Trustees of the Funds ("Collections Policy"), incorporated by reference in the CBA, provides for an estimated audit whereby the Funds "shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period . . . ." Pet. ¶ 20 (quoting ECF No. 1, Ex. H ("Ex. H")).  The Collections Policy contains an arbitration clause for resolution of disputes and provides for arbitration for collection matters before one or more of a designated panel of impartial arbitrators, including J.J. Pierson.  Pet. ¶¶ 21-22; *see* Ex. H at Art. VI.  The Collections Policy further provides that "if the matter proceeds to arbitration or litigation, the employer will be responsible for all delinquent contributions, interest, delinquency assessment, debt collection service fees, attorneys' fees, the entire cost of a payroll and/or audit, and any other expenses incurred by the Funds in determining the amount of the delinquency and in collecting the delinquency."  Pet. ¶ 22 (quoting Ex. H at Art. IV).

Petitioners requested an audit of Respondent covering November 25, 2020 to the then-current date in order to determine if appropriate contributions had been paid by the Respondent to the Funds.  Pet. ¶ 25.  Respondent did not provide its books and records, and the Funds conducted an estimated audit under the Collections Policy and assessed that Respondent failed to

pay $254,977.90 in principal payments.  *Id.* ¶¶ 26-27.  Petitioners thereafter initiated an arbitration before J.J. Pierson.  *Id*. ¶ 28; *see* ECF No. 1, Ex. I ("Ex. I").

A notice to arbitrate was issued on March 9, 2022 and the arbitrator held a hearing on April 6, 2022 in order to address the dispute.  *See* Ex. I; Award at 1; Pet. ¶¶ 28-29.  Proof was provided to the arbitrator that Respondent "had sufficient legal notice of the proceeding and the claims submitted by the Funds."  Award at 2.  Despite that, Respondent did not appear for the arbitration, nor seek an adjournment or extension.  *Id*. at 2.

On April 8, 2022, the arbitrator issued the Award that found that Respondent violated the CBA by refusing an audit of its books and records.  *Id.*  The arbitrator ordered Respondent to pay the Funds $317,642.61, consisting of: (1) $254,977.90 in an estimated principal deficiency; (2) $8,769.13 in interest to continue at a rate of 5.5% per annum from the date of the Award through satisfaction; (3) $50,995.58 in liquidated damages; (4) $400 for court costs; (5) $1,500 in attorney fees; and (6) $1,000 in arbitrator fees.  *Id*. at 2; Pet. ¶¶ 30-31.  The arbitrator also ordered Respondent to produce its books and records and participate in an audit within thirty (30) days, with costs of the audit to be borne by Respondent.  Award at 3.

Respondent was served with the arbitration Award on April 12, 2022 by certified mail. Pet. ¶ 32; *see* ECF No. 1, Ex. K ("Ex. K").  Respondent has not paid or otherwise complied with the Award and has not moved to vacate or modify the Award.  Pet. ¶¶ 33-34.

Petitioners filed the present Petition to confirm the Award on July 5, 2022, along with a memorandum of law and other supporting documents.  *See* Pet.; ECF No. 5 ("Memo.").  Respondents were served on July 6, 2022.  ECF No. 7.  On August 8, 2022, the Court issued an Order stating that the Petition to confirm the arbitration award would be treated as a motion for summary judgment and set down a briefing schedule, requiring Respondent to file any

opposition by September 6, 2022.  ECF No. 8.  The Court ordered Petitioners to serve a copy of

the Court Order and briefing schedule on Respondents.  *Id*.  Petitioners served Respondents by

mail and filed a certificate of service on August 9, 2022.   ECF No. 9.   The case was reassigned

to the undersigned on September 22, 2022.  ECF No. 10.  On September 30, 2022, Petitioners

filed a letter requesting that the Petition be considered an unopposed motion for summary

judgment.  ECF No. 11.

The Court issued an Order on October 13, 2022 providing Respondent with additional

time to respond.  ECF No. 12.  The Court stated that Respondent must file its opposition, if any,

by October 20, 2022, or the motion would be deemed unopposed.  *Id*.  Petitioners filed a

certificate of service attesting that they served the October 13, 2022 Order on Respondent by

mail on October 13, 2022.  ECF No. 14.  The Clerk of the Court also mailed a copy of the Order

to Respondent on October 13, 2022.  To date, Respondent has not responded to the Petition or

otherwise sought relief from the Award.

## DISCUSSION

### I.  Standard of Review

The Court's review of an arbitration award is "narrowly circumscribed and highly

deferential – indeed, among the most deferential in the law."  *NFL Mgmt. Council v. NFL

Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016).  "The confirmation of an arbitration award is a

summary proceeding that merely makes what is already a final arbitration award a judgment of

the court."  *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021)

(quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)).

An award should be confirmed as long as the arbitrator is "arguably construing or applying the

contract and acting within the scope of his [or her] authority . . . ."  *NFL Mgmt. Council*, 820

F.3d at 532 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

"In other words, 'an arbitration award should be enforced, despite a court's disagreement with it

on the merits, if there is a barely colorable justification for the outcome reached.'" *Landau v.*

*Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) (quoting *Landy Michaels Realty Corp. v. Local*

*32B-32J Serv. Employees Int'l*, 954 F.2d 794, 797 (2d Cir. 1992)).

Notwithstanding this deferential standard, and the fact that this Petition is unopposed, the

Court must still carefully examine the record as it would in the context of a motion for summary

judgment. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006) (holding

that "the petition and accompanying record should have been treated as akin to a motion for

summary judgment based on the movant's submissions"). The Court must "determine if [the

petitioner] has met its burden of demonstrating that no material issue of fact remains for trial."

*Id*. at 110 (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co*., 373 F.3d 241, 244 (2d Cir.

2004)).

## II. Confirmation of the Arbitration Award

Petitioner timely filed the Petition to confirm the April 8, 2022 arbitration award as it was

filed within one year of the award. *See* Pet. ¶ 35; Award; *see also Photopaint Techs., LLC v.*

*Smartlens Corp.*, 335 F.3d 152, 159-60 (2d Cir. 2003) (holding that "a party to an arbitration is

entitled to the benefits of the streamlined summary proceeding" to confirm if "it files at any time

within one year after the award is made"). Respondent chose not to appear or dispute the

Petition, after having been provided sufficient notice and extensions of time to respond. After

review of the Petition and supporting exhibits, the Court finds that there is no genuine issue of

material fact in dispute precluding summary judgment for Petitioners. Respondent was bound by

the PLA and CBA to provide payments to the Funds as well as participate in an audit. Award at

2; Pet. ¶¶ 9-14, 18, 20, 22; Exs. A-C, H.  The Collections Policy provided for arbitration of disputes regarding the foregoing.  Pet. ¶¶ 20-22; Ex. H.  Based on the record presented, there is more than a "colorable justification" for the arbitrator's determination that Respondent violated the CBA by failing to provide required contributions and participate in an audit.  Therefore, the Court confirms the Award in favor of Petitioners.

### III. Attorneys' Fees and Costs

Petitioner further seeks $330 in attorneys' fees for 1.2 hours of attorney time, and $77 in fees and costs associated with the Petition to confirm the arbitration award.  Pet. ¶¶ 36-43.

In federal courts, under the American rule, a prevailing party generally cannot recover its attorneys' fees absent statutory authority.  *See Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp*., 774 F.2d 43, 47 (2d Cir. 1985) (detailing American rule and noting that Section 301 of the LMRA does not provide for attorneys' fees in actions to confirm an arbitrator's award).  Petitioners argue they should be awarded attorneys' fees and costs because the Respondent failed to comply with the arbitrator's decision.  Memo. at 4-5.

A court has inherent equitable power to award attorneys' fees when a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Int'l Chem. Workers Union (AFL-CIO), Local No. 227*, 774 F.2d at 47 (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974)).  In the context of confirmation of arbitration awards, the Second Circuit has articulated the following "guiding principle" regarding this inherent equitable power: "when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded."  *Id*. (internal citation omitted).  "Courts in this district have thus routinely awarded attorney's fees when the respondent has neither complied with the award nor opposed the petition to confirm arbitration."  *Gerlman v. Borruso*, No. 19-cv-10649

(RA), 2020 WL 4266678, at *4 (S.D.N.Y. July 23, 2020) (collecting cases).  However, some

courts refuse to do so absent a showing of bad faith.  *See, e.g.*, *Trustees of New York City Dist.*

*Council of Carpenters Pension Fund v. H. Indus. Union Furniture Installers Inc.*, No.

20-cv-02828 (PAE), 2020 WL 2787656, at *4 (S.D.N.Y. May 29, 2020) (declining to award

attorneys' fees in the absence of evidence of bad faith).

      The Court does not need to reach the question of whether Petitioners have met their

burden of showing bad faith here because the agreements between the parties provide for an

award of attorneys' fees and costs.  *See* Pet. ¶ 23 (citing Exs. C, H).  Attorneys' fees and costs

may be awarded if the parties contractually agreed as such.  *See McGuire v. Russell Miller, Inc.*,

1 F.3d 1306, 1313 (2d Cir. 1993) (holding that "parties may agree by contract to permit recovery

of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees"); *New*

*York City Dist. Council of Carpenters Pension Fund v. Dafna Const. Co.*, 438 F. Supp. 2d 238,

242 (S.D.N.Y. 2006)  (awarding attorneys' fees in confirming an arbitration award "because the

Agreement itself require[d] [respondent] to pay attorneys' fees incurred by the Trustees in

seeking confirmation"); *SEIU v. Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 551, 551, 556

(S.D.N.Y. 2004) (awarding attorneys' fees when confirming arbitration award, "as provided in

the collective bargaining agreement"); *Trustees of N.Y.C. Dist. Council of Carpenters Pension*

*Fund v. Mahi Painting, Inc.*, No. 1:22-cv-06496 (GHW), 2022 WL 7584364, at *5 (S.D.N.Y.

Oct. 13, 2022) (finding "an award of attorneys' fees and costs justified" where the party's

collection policy entitled the petitioners to recover attorneys' fees incurred while enforcing their

right to payroll audits and the respondents did not comply with the resulting arbitration award).

      Respondent agreed to the CBA, which incorporates the Collection Policy.  *See* Ex. C at

Art. XV, § 3.  The Collection Policy states that the Funds can recover "reasonable costs and

attorneys' fees" for actions to enforce audit rights and recover delinquent contributions.  Pet. ¶ 23; Ex. H at Art. IV, § 11 ("If the matter proceeds to arbitration or litigation, the employer will be responsible for all delinquent contributions, interest, delinquency assessment, debt collection service fees, attorneys' fees, the entire cost of a payroll review and/or audit, and any other expenses incurred by the Funds in determining the amount of the delinquency and in collecting the delinquency, to the full extent permitted by applicable law."); Ex. H at Art. V, § 6 (stating that "[a]ttorneys' fees shall be assessed against a delinquent employer . . . for all time spent by Collection Counsel in collection efforts or in enforcing the Board of Trustee's right to payroll reviews and/or audits").

Finally, Petitioners have provided contemporaneously created detailed time records and met their burden of proving the reasonableness and necessity of the hours spent, rates charged, and litigation costs incurred, especially given the modest amount of time (1.2 hours) that was spent in connection with this matter.  *See* Pet. ¶¶ 38-43; ECF No. 1, Ex. L; *see* Memo. 5 at 5-7.

## CONCLUSION

For the reasons stated above, the Court grants Petitioners' unopposed Petition to confirm the Award.  Judgment is entered in favor of Petitioners and against Respondent as follows:

(a)  The arbitration Award dated April 8, 2022 is confirmed;

(b)  Respondent is ordered to make available its books and records for an audit covering November 25, 2020 to the present within thirty (30) days of the date of this Order, with costs borne by Respondent;

(c)  Respondent is ordered to pay Petitioners a total of $317,642.61 pursuant to the terms of the Award, plus interest on the principal delinquency of $254,977.90 at the rate of 5.5% from April 8, 2022 through the date of this Order;

(d)  Respondent is ordered to pay Petitioners post-judgment interest at the statutory rate

pursuant to 28 U.S.C. § 1961(a); and

(e)  Petitioners are awarded attorneys' fees of $330 and costs of $77.

Dated:  December 9, 2022
        New York, New York

                                             SO ORDERED.

                                             _____
                                             JENNIFER L. ROCHON
                                             United States District Judge